SPENCER *et al. vs.* THE STATE OF GEORGIA.

1. The superintendent of a plantation has no more right to terrify the laborers under him, and their families, than they have to terrify him and his family. And this is so, regardless of the color of the respective parties. All races and all classes are alike bound to keep the peace and observe the laws.

2. Where the superintendent, after profanely reprimanding two of his laborers, went armed to the house of one of them, the latter, with his wife and children, being within, and discharged his gun into or by the window, and then, upon seeing the two men walking with their guns towards the public road (they most probably intending to go to the owner of the plantation and report what had taken place), pursued them, and, after they had reached the road and taken shelter behind a tree, shot at them, hitting one of them in the face, if they also shot at him in the same moment, this shooting on their part was justifiable.

3. If, immediately afterwards, the one who had been shot in the face called out to the other to shoot, and the other did not shoot, but rushed to the place where the superintendent was standing, and drew his gun to strike and threatened to kill, but was prevented from striking by the by-standers, he did not by this conduct render himself responsible for shooting, which was subsequently done by his wounded comrade when the superintendent had changed his position and was retiring.

4. As the evidence, fairly construed, furnishes no ground for any theory of a common enterprise or purpose which was not defensive in its nature and design, or which embraced any attack upon the prosecutor after he had ceased to face to the front and occupy an offensive attitude, it was error to charge the jury as to the responsibility incurred by persons who participate in a common enterprise or purpose to make an unlawful attack.

5. A common purpose, formed suddenly in an emergency, to defend with even too much force and violence, will not render one participant responsible for offensive acts done by the other alone after defence has been accomplished, and whilst the original assailant is retreating from the scene of conflict.

March 5, 1887.

Criminal Law. Before Judge BOWER. Dougherty Superior Court. April Term, 1886.

Reported in the decision.

WRIGHT & ARNHEIM; J. W. WALTERS, for plaintiffs in error.

W. N. SPENCE, solicitor-general, by D. H. POPE, for the state.

BLECKLEY, Chief Justice.

Spencer and Peck, both negro men, were tried for assaulting McClung, a white man, with intent to murder him by shooting. They were convicted of the minor offense of shooting at him (Code, §4370), and the court refused to grant them a new trial.

1. A careful study of the evidence leaves no room to doubt that the conviction of Peck, under this indictment, could not have happened without grave error on the part of the court or gross mistake by the jury. The superintendent of a plantation has no more right to terrify the laborers under him, and their families, than they have to terrify him and his family. And this is so, regardless of the color of the respective parties. All races and all classes are alike bound to keep the peace and observe the laws. *Moody vs. The State,* 54 *Ga.* 661.

2. The record shows that the superintendent, after profanely reprimanding two of his laborers, went armed to the house of one of them, the latter, with his wife and children, being within, and discharged his gun into or by the window, and then, upon seeing the two men walking with their guns towards the public road (they most probably intending to go to the owner of the plantation and report what had taken place), pursued them, and, after they had reached the road and taken shelter behind a tree, shot at them, hitting one of them in the face, and they also shot at him in the same moment.

This shooting on the part of the negroes was clearly justifiable. The superintendent was the aggressor. Suppose the position of the parties reversed, and who could have any doubt?

3. Immediately afterwards, the one who had been shot in the face called out to the other to shoot, and the other did not shoot, but rushed to the place where the superintendent was standing, and drew his gun to strike and threatened to kill, but was prevented from striking by the bystanders. He did not by this conduct render himself responsible for shooting, which was subsequently done by his wounded comrade when the superintendent had changed his position and was retiring.

Peck did no hostile act after McClung turned to retire; neither did he go back to the tree, or have any communication with Spencer before the latter fired. The interval was very short between the shooting in which all three participated, and that done by Spencer alone. No doubt the latter was still smarting from the wound in his face. At the time of this single shot, McClung had just left his position, turned round, and was walking away from the negroes towards his own house. The effect of this discharge was to pepper him lightly in the back with birdshot.

4. The court charged the jury touching the responsibility of such as participate in a common enterprise or purpose to make an unlawful attack. The delivery of such a charge assumed that there was evidence on which to found it, but we think there was none.

The evidence, fairly construed, furnishes no ground for any theory of a common enterprise or purpose which was not defensive in its nature and design, or which embraced any attack upon the prosecutor after he had ceased to face to the front and occupy an offensive attitude; it was therefore error to charge the jury as to the responsibility incurred by persons who participate in a common enterprise or purpose to make an unlawful attack.

5. So far as the negroes acted in concert, their conduct indicated a union for defence, and nothing else. Suppose they combined deliberately for this purpose, they had a right, under the circumstances, to do so. McClung was

armed, was in bad temper towards them both, and was conducting himself in a way to threaten them with lawless violence. Their families were on the premises as well as his, and had as much right to protection. They had not interfered with his threshold; he had with theirs. As to any sudden combination they may have formed at the tree after the fight opened, or when it seemed about to open, that also, judging from their conduct, was defensive, and defensive only. Suppose it took in a scheme of defence embracing too much violence, such as shooting at McClung at the moment when Spencer called out to Peck to fire, a call which the latter disregarded; suppose it covered the attempt by Peck to strike with his gun; all this occurred whilst McClung was standing his ground and facing to the front, with weapon in hand, waiting for a fresh supply of ammunition. The parties were still on the scene of combat, and defensive operations, even of a kind semi-offensive, were not wholly irrelevant; but when McClung gave up the fight and turned to leave the field, defence was finished, and anything afterwards done offensively by one of the negroes would be on his own responsibility.

A common purpose, formed suddenly in an emergency, to defend with even too much force and violence, will not render one participant responsible for offensive acts done by the other alone after defence has been accomplished, and whilst the original assailant is retreating from the scene of conflict.

Our conclusion is, that Peck certainly ought to have been acquitted; and that whether Spencer was guilty or not, both ought to have been tried without embarrassing the case with any instructions to the jury touching conspiracy, or a combination for unlawful attack. How much harm this erroneous charge may have done, even to Spencer, we know not. Any suggestion of conspiracy, where no suggestion of the kind is appropriate, tends to prejudice the accused. If the evidence were such as to

constrain the verdict against Spencer, we might let it stand as to him, but it is not of that conclusive character, and we consequently reverse the judgment as to both.

Judgment reversed.