CLAYTON *et al. v.* DANIEL.

There was no abuse of discretion in granting a first new trial.
February 3, 1892.                              *Judgment affirmed.*

New trial. Before Judge BOYNTON. Spalding superior court. February adjourned term, 1891.

Doctor Daniel sued G. W. & E. M. Clayton upon an account for medical services · rendered to one Troy Rivers. There was a verdict for the defendants. A motion for a new trial was made, upon the grounds that the verdict was contrary to law, evidence, etc. A new trial was granted, and the defendants excepted. The evidence for the plaintiff was to the following effect:

Defendants had a contract for railroad grading. One Homer was in charge of the work as boss of the hands. Rivers, one of the hands, was caught under falling earth and hurt. One Snider ran for a doctor and got Daniel, and Daniel went down to where Rivers was. Snider testified that he did not see the defendants there and that he was requested to go for Doctor Daniel, but did not state who requested him. Daniel went to the works and found Rivers badly hurt and unconscious. Soon after he arrived where Rivers was lying, one of the defendants came up and asked if a doctor had been sent for. He was told by Homer, "Yes, here is a doctor," and defendant asked what had best be done for Rivers. Daniel said he must be moved into a house; defendant said he had a house and they would carry him there, and Rivers was moved to the house immediately. Daniel and defendant walked to the house together, and when they arrived defendant told him to do all he could for Rivers, that he (defendant) had plenty of wood to make him comfortable, and to call any of the hands to turn Rivers over and assist at any time. Daniel said Rivers ought to be placed on a cot and should have another article; defendant said all right, he would get them, and he did get them. When the defendant started he turned and said, "Doctor, save him if you can." He also told the doctor to do all he could for the boy, and upon that the doctor gave him good attention and cured him. The amounts charged in the bill sued upon are less than the regular fees for such services. Defendant came to see Rivers frequently while the doctor attended him, had him moved to another house, and in passing would ask the doctor how he was, and told the doctor to get him up as soon as he could and get him on his feet. When Rivers got so he could go about, the doctor told defendant the case was ready to be dismissed, who replied, "All right." The first of the month fol-

lowing the doctor presented his bill, and defendant received it without saying anything. About a month afterwards the doctor asked him for the money, and he said he did not know if they should pay it. When the doctor got Rivers up he turned him over to defendants, and they sent Rivers and his mother to their home. When Rivers was first taken into the house the doctor injected morphine, whiskey and quinine, and afterwards defendant asked him if he had not best give Rivers some brandy and the doctor said yes, so soon as Rivers got able to swallow.

The testimony for the defendants was to this effect: When the accident occurred they were about a mile away, and when they arrived, found that Rivers had been carried to a house. They walked in; one of them felt the negro's pulse and asked if a doctor had been sent for. Plaintiff stepped forward and said he was the doctor, and this defendant asked what he had done for the negro, and, the doctor replying he had given him morphine, asked if a little brandy would not help him, and the doctor said, "Yes," and gave him some. The doctor then suggested that Rivers ought to have something to lie upon, and the other defendant purchased a cot and sent it down for Rivers. Defendants never employed plaintiff nor intimated that they would pay any bill. Rivers was simply hired by the day. Plaintiff never asked them if they would pay the bill until after the services were rendered, nor intimated that he would look to them for payment, and when he presented the bill, was told they had nothing to do with it and were not responsible for it. During the time Rivers was confined to his bed he was furnished by defendants with a house, a cot, wood and provisions for himself and mother. One of the defendants testified that he knew something of medicine, and nearly always acted as doctor for any of his hands who might be sick or get hurt;

and that as soon as he heard that Rivers was hurt he sent and notified the commissary to hold . up his wages. The other testified that Homer was an overseer of hands for defendant but had no authority to send for or hire a doctor.

BECK & CLEVELAND, for plaintiffs in error.
STEWART & DANIEL, by brief, *contra.*