A02A0452, A02A0453. HARVEY v. J. H. HARVEY COMPANY (two cases).
(568 SE2d 553)

ANDREWS, Presiding Judge.

Joseph H. Harvey III (hereinafter Harvey III) is the son of Joseph H. Harvey, Jr. (hereinafter Harvey, Jr.) and grandson of the founder of J. H. Harvey Company (hereinafter the Company), a closely held family business operating a regional chain of supermarkets in south Georgia and north Florida. Harvey III appeals from the trial court's grants of partial summary judgment to the Company in his two suits[1] resulting from the termination of his employment agreement which, as amended, provided he would serve as the chief operating officer of the Company until the age of 65 or his death. In Case No. A02A0452, Harvey III also appeals from the trial court's

---

[8] See OCGA § 40-6-391 (a) (5).
[9] See *Mooney v. State*, 221 Ga. App. 420, 425 (3) (471 SE2d 904) (1996) (physical precedent only).
[1] Case No. A02A0452 involved breach of the employment agreement while Case No. A02A0453 involved Harvey III's suit for specific performance of provisions of the 1989 Shareholders' Agreement.

denial of his motion for partial summary judgment regarding mitigation of damages.

In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. *Birnbrey, Minsk & Minsk, LLC v. Yirga*, 244 Ga. App. 726 (535 SE2d 792) (2000).

### *Case No. A02A0452*

Harvey III, on August 27, 1989, entered into an agreement with the Company employing him as president and chief operating officer. The agreement provided that Harvey III would receive a base salary at the annual rate of $150,000 payable monthly in arrears, plus a percentage of net profits on a quarterly basis. Originally, the agreement stated that it "shall continue until the death of the Employee." By amendment of March 23, 1993, the term of employment was changed to the "earlier of: (a) May 26, 2020, the 65th birthday of Employee, or (b) the death of the Employee." Both the agreement and the amendment were signed for the Company by Harvey, Jr. as chairman of the board of directors.

In the years prior to 2000, Harvey, Jr. began negotiations with Harvey III in an effort to sell his shares in the Company and resign his employment. In July 1999, Harvey, Jr. offered to sell his shares to Harvey III and resign from the Company in exchange for $25,000,000. In the spring of 2000, disputes about Harvey III's running of the Company resulted in a number of employees expressing their concerns for the Company to Harvey, Jr.

Because of the continuing disagreement over the value of Harvey, Jr.'s interest in the Company and Harvey III's running of the Company, Harvey, Jr. attempted to place Harvey III on administrative leave from the Company and changed the Company's reporting system so key employees reported directly to him instead of to Harvey III. Harvey III continued to receive his compensation. On September 6, 2000, the board of directors of the Company reorganized the Company so that Harvey III was no longer in charge of its day-to-day operations. On September 7, 2000, Harvey III withdrew his personal guarantee of the Company's line of credit at First Union Bank, resulting in a fiscal crisis for the Company.

On November 7, 2000, Harvey III filed the shareholder litigation which is the subject of Case No. A02A0453, addressed infra. On December 1, 2000, the Board terminated Harvey III's employment, but agreed to pay his salary until December 31, 2000.

Harvey III then filed this suit for breach of his employment contract. In response, the Company filed a counterclaim on numerous

grounds, including the breach of the duty of good faith and fair dealing, as well as its motion for partial summary judgment. The trial court granted the Company's motion for partial summary judgment, limiting Harvey III's potential damages to the amount of wages, bonuses, and benefits he would have earned up to the date of trial.[2] The trial court also denied Harvey III's motion for partial summary judgment which sought a mandatory injunction requiring the Company to continue paying him his salary and benefits because it was impossible to mitigate his damages.

1. Harvey III, relying on *City Council of Augusta v. Hydrick*, 126 Ga. App. 611, 614 (3) (191 SE2d 563) (1972), contends that the trial court erred in limiting his damages to those accrued up to the time of trial, contending that OCGA § 10-6-37 is not applicable to his contract because it was for more than one year.

That section provides that:

> When the contract is for a year, and the principal wrongfully discharges the agent before the end of the year, the agent may either sue immediately for any special injury from the breach of the contract, or, treating the contract as rescinded, may sue for the value of the services rendered, or he may wait until the expiration of the year and sue for and recover his entire wages.

*City Council of Augusta v. Hydrick*, supra, is inapplicable to Harvey III's situation, however, because it dealt with a government employee who had, by virtue of a State statute dealing with City of Augusta employees, permanent employment. The City appealed, contending that the trial court erred in giving a charge to the jury that Hydrick would be entitled to recover the value of her contract to her, that is the amount of money which would put her in the same position as if her contract of employment had not been breached. The City relied upon then Code § 4-215 (now OCGA § 10-6-37), as well as a number of pre- and post-1861 cases dealing with constructive service, including *Rosenstock v. Congregation Agudath Achim*, 118 Ga. App. 443 (164 SE2d 283) (1968), in an attempt to limit Hydrick's damages to those accrued up to the time of trial. This Court correctly concluded that neither the statute nor the cases applied to Hydrick's situation which involved permanent tenure as a matter of statute. *City Council of Augusta v. Hydrick*, supra at 614.

An analysis of the history of the evolution of the concept of con-

---

[2] In his complaint, Harvey III claimed that he had been "substantially damaged in an amount yet to be ascertained, but not less than One Million ($1,000,000.00) Dollars per year until May 26, 2020."

structive service in Georgia shows the concept applicable to Harvey III's situation, though not under the provisions of OCGA § 10-6-37. Therefore, the trial court's grant of partial summary judgment to the Company was correct, but not on the grounds argued by the Company. A summary judgment right for any reason will be affirmed. *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (2) (553 SE2d 868) (2001).

Prior to the adoption of Georgia's Original Code of 1863 (enacted as the Code of 1861, but made effective January 1, 1863), the common law doctrine of constructive service, set out as the last option in OCGA § 10-6-37 ("wait until the expiration of the year and sue for and recover his entire wages"), was adopted by the Supreme Court of Georgia in *Rogers v. Parham*, 8 Ga. 190 (1850). Parham had been retained by Rogers as overseer for the year 1847 and was to receive a portion of the crops grown for his service. Prior to the expiration of the year, a dispute arose and Parham filed suit. Rogers contended that the suit was premature, the year not having ended. The Supreme Court found that:

> When the overseer or agent is *wrongfully* dismissed from the service of his employer, he has his election of three remedies. 1st. He may bring an action, *immediately*, for any *special injury* which he may have sustained, in consequence of a *breach* of the contract. 2d. He may wait until the termination of the period for which he was employed, and then sue upon the contract and recover his whole wages. 3d. He may treat the contract as rescinded, and may *immediately sue*, on a *quantum meruit*, for the work and labor he actually performed.

(Citation omitted; emphasis in original and supplied.) Id. at 193.

The Original Code of 1863 contained Title III (Of Relations Arising From Other Contracts), Chapter 5 (Of Principal and Agent), Article 4 (Overseers). Section 2196 of Article 4, the predecessor of OCGA § 10-6-37, referred only to employers who "wrongfully discharge[d] the overseer . . . ," a term with a particularized meaning as reflected by preceding Title II dealing with Domestic Relations. Title II included Chapter 4, Article 1, "Of Master and Servant" and Chapter 5, Article 2, "Of Master and Slave." See also *Spencer v. State of Ga.*, 77 Ga. 155 (3 SE 661) (1887); *Clayton v. Daniel*, 88 Ga. 300 (14 SE 470) (1892).

Although codified only as to overseers, the common law principle of constructive service continued to be applied to other occupations. In *Isaacs v. Davies*, 68 Ga. 169 (1881), Davies was employed by Isaacs as a clerk for five months, payable monthly. Isaacs discharged Davies before the end of the first month. Davies sued for his first month's

wage, recovered, and was paid. He then sued for the second month's wage, but Isaacs pled the first judgment as bar to this suit. Finding no bar, the Supreme Court held that:

> Had Isaacs continued Davies in his service and failed or refused to pay him at the end of each month, no one would question his liability to suit and judgment. If, then, he discharged him wrongfully, he did not, and could not thereby discharge himself from liability. If Davies kept his part of the contract, or offered to keep it, and was not permitted to do so by the acts of Isaacs, the latter cannot set up his own breach of the contract to discharge himself from its performance. See Code [of 1873], § 2939; [*Blun & Sterne v. Holitzer*,] 53 Ga. 82 [(1874)]; 1st Story on Con. §§ 25 (d.), 29.

Id. at 170.

Although the Company argues that this case supports its position that OCGA § 10-6-37 applies to contracts for a length other than one year, i.e., five months in *Isaacs v. Davies*, supra, or the remaining eighteen years of Harvey III's contract, Code § 2939, cited in *Isaacs v. Davies*, supra, is now codified as OCGA § 13-6-14. It provides that if a contract is entire, "only one action may be maintained for a breach thereof; but, if it is severable or if the breaches occur at successive periods in an entire contract, an action will lie for each breach; but all the breaches occurring up to the commencement of the action must be included therein."

In *Cox, Hill &c. v. Bearden*, 84 Ga. 304 (10 SE 627) (1889), Bearden sued his former employer after the expiration of his six-month term as a clerk, although he was discharged prior to the six months. The issue was whether the sum he recovered was excluded from garnishment for another debt owed by him because it represented "wages" instead of damages for contract breach, which would not be excluded. Citing a number of cases, including *Isaacs v. Davies*, supra, the Supreme Court found that:

> The state of our law on the subject seems to be this: that where a servant is wrongfully discharged after rendering a portion of the services contracted for, he can, by waiting until the expiration of the term, bring his action for wages as though he had actually performed his contract, and will, *prima facie*, be entitled to recover wages at the rate stipulated in the contract; but the employer may reduce the recovery by so much as the servant did earn, or could, by the use of ordinary diligence, have earned in other employment of like kind, the burden of proving the facts requisite to

establish such reduction being upon him, the employer. The *doctrine of constructive service* recognized by Lord Ellenborough in *Gandell v. Pontigny*, 4 Camp. 375, still prevails in Georgia, and *as to overseers* is expressly recognized by the code [of 1882], § 2217, [now OCGA § 10-6-37,] though the doctrine seems to be generally denied, or at least doubted, as sound law both in England and this country. 2 Chitty Con. 855; Smith M. & S. 188-196; Wood M. & S. § 127, p. 254; Schouler's Dom. Rel. § 472; MacD. M. & S. 193-194; Smith's L. C., mar. pp. 45-46, in notes to *Cutter v. Powell*. Abiding by our own cases, we hold that the suit in question was for monthly wages, and that the money collected as a consequence was compensation realized upon a contract for services as a clerk. Whether, if the suit and recovery had been for damages for the breach of such a contract by discharging the clerk, the money would have stood in lieu of wages and thus have been exempt from garnishment by an equitable construction of the statute, we need not consider.

(Emphasis supplied.) *Cox, Hill &c. v. Bearden,* supra at 306-307 (1).

In Vol. 2, Code of 1895, the provision relating to overseer was changed to apply to any "agent" wrongfully discharged by his employer. Vol. 2, Code of 1895, § 3016. The only other change from the current wording of OCGA § 10-6-37 is the use of "employer" in Section 3016 instead of "principal."

The Company relies upon *Rosenstock v. Congregation Agudath Achim*, supra, for its argument that OCGA § 10-6-37 applies to contracts of any length, not just those of one year. *Rosenstock*, however, relied primarily not upon the statute for its holding, but upon the common law concept contained in the cases discussed above, especially *Cox, Hill &c. v. Bearden*, supra. Code § 4-215 (now OCGA § 10-6-37), while also cited, by its terms applies only to contracts of one year, and is cited as supportive of the constructive service concept contained in *Cox, Hill &c. v. Bearden*, supra.

*Rosenstock v. Congregation Agudath Achim*, supra, does support the conclusion of the trial court that Harvey III may recover only his damages up to the time of trial. As stated there,

the rule as stated in the *Cox* case does not affect the running of the statute of limitation on the right of action for accrued wages. If the contract is severable and provides for wages payable in periodic instalments, then the employee need not wait until the expiration of the contract term but may sue, under the legal fiction assuming a rendition of "constructive service," for the instalments of his wages as they accrue.

> *Blun & Sterne v. Holitzer*, [supra at] 84; *Isaacs v. Davies*, [supra at] 170; *Moore v. Kelly & Jones Co.*, 111 Ga. 371, 373 (36 SE 802) [(1900)]; *Edison v. Dundee Woolen Mills*, 20 Ga. App. 404, 410 (93 SE 324) [(1917)]. Thus a right of action accrues, and the statute of limitation begins to run, as to each instalment as it falls due. "It is a general and established principle of law that the statute of limitation begins to run from the time the right of action accrues." Ga. Prac. and Proc., § 29-17 (3rd Ed.); *Mobley v. Murray County*, 178 Ga. 388, 392 (173 SE 680) [(1934)]. Note that the rule is different where the contract of employment is entire, not severable, though it provides for payment in instalments. See *Burns v. Mitchell*, 55 Ga. App. 862 (2) (191 SE 870) [(1937)]. In the latter instance, the statute of limitation on the right of action for the stipulated wages, as distinguished from the right of action for damages for any special injury, would not begin to run until the expiration of the term of the employment contract. If the employee elects to treat the contract as continuing after wrongful discharge, the right of action as to the last instalment of his salary does not accrue until expiration of the stipulated term of employment.

Id. at 444-445.

The contract at issue is severable and not entire, and Harvey III may sue for each breach without waiting until the end of the term, which, in this case, is uncertain. *Baker v. Brannen/Goddard Co.*, 274 Ga. 745, 748-749 (559 SE2d 450) (2002); *Douglas & Lomason Co. v. Hall*, 212 Ga. App. 475, 476-477 (1) (441 SE2d 870) (1994); see *Schuck v. Blue Cross &c.*, 244 Ga. App. 147 (534 SE2d 533) (2000); *Barker v. CTC Sales Corp.*, 199 Ga. App. 742 (1) (406 SE2d 88) (1991). His damages, however, are limited, as concluded by the trial court, to the time of trial. *Roberts v. Crowley*, 81 Ga. 429, 439 (3) (7 SE 740) (1888); *Roberts v. Rigden*, 81 Ga. 440, 443 (1) (7 SE 742) (1888).

Although Harvey III argues that this Court should do away with the concept of constructive service as discussed in these cases, we are bound by the precedent of the Supreme Court and this Court recognizing it. *Etkind v. Suarez*, 271 Ga. 352, 357 (5) (519 SE2d 210) (1999); *Edison v. Dundee Woolen Mills*, supra at 410 (2). As far as any change in the concept contained in OCGA § 10-6-37, that is for the legislature, not this Court. *Warden v. Hoar Constr. Co.*, 269 Ga. 715, 717 (1) (507 SE2d 428) (1998); *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. 141, 144 (1) (542 SE2d 538) (2000).

2. Harvey III also contends that the trial court erred in denying his motion for summary judgment because the Company failed to

carry its burden regarding mitigation of Harvey III's damages because no reasonable mitigation is possible in his case.

The sole factual basis put forward by Harvey III for his contention regarding his duty to mitigate was that:

> No other supermarket chains remotely comparable to the J. H. Harvey Company are based in the State of Georgia. Having been in the grocery business in the southeast all my life, I know that it is absolutely impossible for me to get a job in the Southeastern United States with comparable compensation, benefits or responsibilities that I had as the chief executive officer of the J. H. Harvey Company. I reside in Berrien County, Georgia and desire to continue living here.

Whether pursuant to OCGA § 10-6-38 or § 13-6-5, Georgia requires one injured by breach of an employment contract to mitigate damages. For a number of reasons, the trial court did not err in denying Harvey III's motion for partial summary judgment regarding the impossibility of mitigation. First, he cites no authority, and we are aware of none, supporting his contention that he is entitled to a job exactly comparable to the one he lost before he has a duty to mitigate. Second, the paragraph set out above contains, at best, his own opinions, allegations, conclusory facts, and conclusions of law, which cannot support a motion for summary judgment. *Seals v. Hygrade Distrib. &c.*, 249 Ga. App. 574, 577 (1) (549 SE2d 412) (2001); *Corporate Property Investors v. Milon*, 249 Ga. App. 699, 701 (1) (549 SE2d 157) (2001).

Because the trial court has not yet made a ruling based on the arguments made here by both the Company and Harvey III regarding the standard to be used in determining mitigation, we do not address it. *Litland v. Smith*, 247 Ga. App. 277, 278 (2) (543 SE2d 468) (2000).

There was no error.

### Case No. A02A0453

3. In this case, Harvey III appeals from the trial court's grant of Harvey, Jr.'s motion for partial summary judgment and denial of his motion for summary judgment in Harvey III's suit seeking specific performance of a provision of the 1989 Shareholders' Agreement giving him the option to purchase transferred shares.

The shares of J. H. Harvey Company are subject to a Shareholders' Agreement signed by Harvey, Jr., Harvey III, and the four other

shareholders[3] on August 4, 1981 (the 1981 Agreement). On August 31, 1989, Harvey, Jr. and Harvey III entered into a Shareholders' Agreement which made the 1981 Agreement "a part hereof by express reference" (the 1989 Agreement).

The 1981 Agreement sets forth various restrictions on the transfer of shares outside the Harvey family. It further, however, states that these restrictions do not apply when the holders of at least two-thirds of the issued and outstanding shares consent. Section 1.1 states that "[e]ach Shareholder hereby covenants and agrees that . . . he will not . . . pledge . . . all or any part of his Shares to any person, firm, corporation or other entity without obtaining the prior written consent of the holders of at least two-thirds (2/3) of the issued and outstanding Shares."

When Harvey, Jr. pledged his shares to First Union Bank, as demanded by the bank after Harvey III withdrew his personal guarantee of the Company's line of credit, Harvey, Jr. obtained prior written consent as required by this section.

Pursuant to the 1981 Agreement, if Harvey, Jr. were to sell his shares in violation of the agreement, the Company would have a priority option to purchase the transferred shares within 60 days of receiving notice of the transfer. The 1981 Agreement provides that all of the shareholders vote on whether the Company exercises this option. If the Company purchased only a portion or none of these shares, any shareholder would then have a right to individually purchase the remaining shares within 90 days.

The 1989 Agreement, however, contained a change in this procedure, giving Harvey III alone the option to purchase shares transferred by Harvey, Jr. to someone other than a permitted transferee. Section 4 states that:

> Joe, Jr. hereby grants to Joe, III *an option* regarding any or all of the shares of stock of the Company transferred by him . . . , to the extent such transfers are not made either to Joe, III or Joe, III's spouse, . . . or any of Joe, III's descendants, *to purchase the transferred shares from the transferee* in any such case, and Joe, Jr. warrants . . . that he will subject such transfers to the terms of this option at the time of transfer. . . .

(Emphasis supplied.)

Pretermitting whether the 1989 Agreement is a valid amendment to the 1981 Agreement, since it is not signed by all parties to

---

[3] These four shareholders, Robinson, Giddens, Smith, and Wiseman, have filed an amicus curiae brief in support of the trial court's grant of summary judgment to Harvey, Jr.

the 1981 Agreement, we conclude that the trial court properly granted summary judgment to Harvey, Jr. because the pledge of the stock to the bank was not a "transfer" as contemplated by Section 4.

Even assuming that the pledge of the stock as collateral for the line of credit was a "transfer," so as to trigger Harvey III's option, Harvey III could not purchase the shares *from the transferee* because the bank had only a security interest in the shares and did not have title to them absent a loan default by the Company, which did not occur.

To interpret the 1989 Agreement otherwise would make the requirement that Harvey III purchase from the transferee meaningless. In applying the rules of construction of contracts, we look to that construction which will uphold the contract as a whole and not make any provision meaningless. *Deep Six v. Abernathy*, 246 Ga. App. 71, 74 (2) (538 SE2d 886) (2000).

There was no error.

*Judgments affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JULY 3, 2002 — 

*Alston & Bird, Jay D. Bennett, Dow N. Kirkpatrick II, Heather R. Peoples, J. Reese Franklin, W. Daniel Knight, Jr.*, for appellant.

*King & Spalding, Frank C. Jones, Benjamin F. Easterlin IV, Rance L. Craft*, for appellee.

*Troutman Sanders, Robert H. Buckler*, amicus curiae.