In the matter of John Douglas GALBREATH, Debtor.

James B. Wessinger, III Chapter 7 Trustee, Plaintiff

v.

Joel Spivey, Ronnie A. Spivey, and Douglas Asphalt Company, Defendants.

Bankruptcy No. 99–60517.
Adversary No. 00–6017.

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

Sept. 26, 2003.

W. Brooks Stillwell, III, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Plaintiff.

### *ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDMENT TO FIRST AMENDED COMPLAINT*

LAMAR W. DAVIS, JR., Bankruptcy Judge.

Before the Court is Defendants' Motion for Reconsideration of the Court's August 27 Order granting Plaintiff's Motion to Amend the First Amended Complaint to add a claim pursuant to O.C.G.A. § 18–2–21. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 157.

Defendants argue that the Court should prohibit Trustee from amending his Complaint to add the claim under O.C.G.A. § 18–2–21 because the statute does not create a viable cause of action, Trustee failed to show good cause for the Court to allow the amendment, and the amendment would unduly prejudice Defendants.

*FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Trustee filed his First Amended Complaint against DAC and the Spiveys on March 27, 2000, asserting, in Count One, that certain transfers made by the Debtor to the Defendants were intentional fraudulent conveyances pursuant to 11 U.S.C. § 548(a)(1) and O.C.G.A. § 18–2–22.

On November 6, 2001, all parties to this adversary proceeding filed a joint motion requesting the Court to bifurcate the trial of this case into two phases. On November 15, 2001, the Court issued a Consent Order granting the motion. Several of the Trustee's claims, including Count One, were reserved for the second phase of the trial.

In April 2002, the Georgia legislature repealed O.C.G.A. § 18–2–22, effective July 1, 2002.[1] In its place, the legislature enacted the Uniform Fraudulent Transfers Act ("UFTA") codified at O.C.G.A. § 18–2–70 through § 18–2–80.

Prior to the beginning of Phase Two of this trial, a United States District Court for the Northern District of Georgia held that all causes of action under § 18–2–22 were destroyed and any pending action was abated by the repeal of the provision, *Chepstow Limited v. Marshall B. Hunt, et.al.,* 1:02–CV–3188–CC (N.D.Ga. July 11, 2003). In light of the *Chepstow Limited* decision, Plaintiff sought to add the § 18–2–21 claim because of the uncertainty surrounding the enforceability of § 18–2–22.

## CONCLUSIONS OF LAW

1. O.C.G.A. § 18–2–21 provides a viable cause of action.

■ Defendants argue that O.C.G.A. § 18–2–21 does not provide an independent cause of action for fraudulent conveyance, because if it did, then the legislature would have repealed it along with § 18–2–22 in order to avoid having two separate causes of action for fraudulent conveyance. They contend that if the Court finds that § 18–2–21 provides a cause of action, it effectively will negate the repeal of O.C.G.A. § 18–2–22. Of course, even assuming that the *Chepstow Limited* case is correctly decided, it is equally likely that the legislature did not intend the repeal of § 18–2–22 to create a virtual "fraud free zone" for all fraud that occurred prior to July 1, 2002, but had not yet been subject to a final adjudication. Since the legislature is presumed to know and intend the legal consequences of its actions, I must presume it was aware that § 18–2–21 would remain on the books and that the section means what it says. O.C.G.A. § 18–2–21 states that, "[c]reditors may attack as fraudulent a judgment, conveyance, or any other arrangement interfering with their rights, either at law or in equity." I hold that the statute independently provides for both a cause of action at law and one in equity.

*a. Cause of action at law.*

Prior to the adoption of the first code of Georgia,[2] the validity of conveyances made to defraud creditors was determined by

---

1. Repealed by Ga. L.2002, p. 141, § 2.

2. The Code of 1863 is recognized as the original code of Georgia. *Harvey v. J.H. Harvey Co.,* 256 Ga.App. 333, 336, 568 S.E.2d 553, 555 (2002).

the English Statute of 13 Elizabeth, dating back to the sixteenth century, which voided conveyances made for the purpose and with the intent to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts or damages. *See McDowell v. McMurria,* 107 Ga. 812, 33 S.E. 709, 710 (1899) (describing text of Statute of Elizabeth). The common law as applied in Georgia is the common law and the statutes of England that were in force on May 14, 1776. *Record Truck Line, Inc. v. Harrison,* 109 Ga.App. 653, 658, 137 S.E.2d 65, 69 (1964). Thus, the Statute of Eliz. became part of Georgia's common law, and Georgia later based its fraudulent conveyance statute on it. *Chattanooga Fed. Sav. & Loan Ass'n v. Northwest Recreational Activities, Inc., (Matter of Northwest Recreational Activities, Inc.),* 4 B.R. 36, 39 (Bankr.N.D.Ga.1980). The adoption of § 1952 of the Code of 1863, the predecessor of O.C.G.A. § 18–2–22, codified the statute of Eliz. as it was embedded in Georgia common law. *Westmoreland v. Powell,* 59 Ga. 256, 1877 WL 3179, at *2 (1877) (holding that Statute of Eliz. was not repealed by codification and remained in force).

■ Thus, O.C.G.A. § 18–2–22 and its predecessors were all codifications of the common law rule against fraudulent conveyances. When the legislature repealed the § 18–2–22 codification, the common law rule under the Statute of Eliz. was revived. *See Gray v. Obear,* 54 Ga. 231, 1875 WL 3024, at *2 (1875) (holding that repeal of statute declaratory of what common law was, without more, leaves common law in full force and operation); *see also Roberts v. Johnson,* 91 Wash.2d 182, 188, 588 P.2d 201, 204 (1978) (affirming *Lau v. Nelson,* 89 Wash.2d 772, 575 P.2d 719 (1978), insofar as it held that repeal of statute restores rule at common law); *State v. Gen. Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 143, 107 S.E.2d 353, 357 (1959) ("When a statute repeals the common law and the statute itself is subsequently repealed, the common law is revived and when a statute which is declaratory of the common law is repealed the common law remains in force for the reason that the statute was an affirmance of the common law."). Therefore, when the legislature repealed § 18–2–22, and according to *Chepstow Limited,* left no remaining cause of action under its provisions, the common law reemerged as an appropriate remedy for fraudulent conveyance. Whereas, prior to the repeal of § 18–2–22, § 18–2–21 referred plaintiffs to § 18–2–22 for their cause of action in law, now, § 18–2–21 refers plaintiffs to UFTA or, in the case of those claims that cannot be brought under UFTA, to the common law cause of action. I therefore respectfully disagree with the *Chepstow Limited* holding.[3]

---

**3.** In *Chepstow Limited,* the Northern District court, relying on *McDowell v. McMurria,* 107 Ga. 812, 33 S.E. 709 (1899), held that there was no common law action for fraudulent conveyance. However, *McDowell* referred to avoidance of a transfer as between the parties to the transaction as opposed to creditors. In *McDowell,* the Defendant transferred property to a trustee to hold for his children, and the Defendant's creditors attacked the transfer as fraudulent and void. The primary question before the court in that case was whether a decree declaring the conveyance fraudulent as to the creditors would leave the transfer operative as between the grantor and grantee.

The *McDowell* court, in holding that the parties to the instrument are not included in the statute voiding the conveyance, reasoned that, "[a] clear enunciation of the statute of 13 Eliz. is that such conveyances are void only as to such persons [creditors and persons who have a rightful claim against the grantor]. These being the provisions of our statute, and there being no rule of the common law which declared conveyances made to hinder or delay creditors void, it would seem scarce-

For the foregoing reasons, I conclude that O.C.G.A. § 18–2–21 provides a viable cause of action at law for fraudulent conveyance.

### b. Cause of action in equity.

O.C.G.A. § 18–2–21 also grants creditors the right to attack a conveyance as fraudulent in equity. Title 23 of the Georgia Code expressly addresses claims and remedies in equity. Specifically, O.C.G.A. § 23–2–51(b) describes acts which constitute constructive fraud as "any act of omission or commission, contrary to legal or equitable duty, trust, or confidence, justly reposed, which is contrary to good conscience and operates to the injury of another." This provision defines the elements of a cause of action for a fraudulent conveyance under O.C.G.A. § 18–2–21; a fraudulent conveyance is an act of commission, contrary to a legal or equitable duty which is contrary to good conscience and operates to the injury of another. Furthermore, O.C.G.A § 23–2–60 provides that "fraud will authorize equity to annul conveyances", thereby providing an equitable remedy for a cause of action in equity under § 18–2–21.

It is evident that the Georgia legislature intended UFTA and § 18–2–21 to co-exist. Primarily, the legislature did not repeal § 18–2–21. In addition, UFTA provides that, "[u]nless displaced by the provisions of this article, the principles of law and equity, including ... the law relating to ... fraud ... supplement its provisions."

O.C.G.A. § 18–2–80. This indicates that the Georgia legislature was cognizant of the role of O.C.G.A. § 18–2–21 in relation to the repeal of § 18–2–22 and the adoption of UFTA.

### 2. Federal Rules of Civil Procedure 15 and 16

■ Federal Rules of Civil Procedure 15 and 16 establish the applicable guidelines for amending pleadings after the deadline set in the scheduling order has passed. If Trustee's motion to amend the complaint had been filed within the time prescribed by the scheduling order, Rule 15 would be the primary analysis. However, because Trustee's motion was untimely in light of the scheduling order, Trustee must first demonstrate good cause under Rule 16(b) before the Court will consider whether amendment is proper under Rule 15(a), *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir.1998).

■ "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir.2001) (citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992)). The good cause standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa,* 133 F.3d at 1418 (quoting Fed.R.Civ.P. 16 advisory committee's note).

---

ly necessary to cite authority to support the doctrine that such conveyances are not invalid between the parties to the instrument." *Id.* at 710–711. Clearly the *McDowell* court is not denying the existence of common law related to fraudulent conveyance, it is merely referring to common law which would void the fraudulent conveyance between the transacting parties. *See Fuller v. Fuller,* 213 Ga. 103, 107, 97 S.E.2d 306, 309 (1957) (citing

*McDowell* for proposition that deed made to defraud creditors is good as between parties to deed but void as to creditors). *See also Stone Mountain Pool Supply Co. v. Imperial Pool Co.,* 170 Ga.App. 283, 283, 316 S.E.2d 769, 769 (1984) (recognizing that a common law-based cause of action to set aside a fraudulent transfer is an action at law and not in equity).

■ In this case, Trustee has demonstrated good cause to amend the complaint. First, Trustee's delay in filing the motion to amend is not a result of ambivalence or carelessness. Since the September 20, 2002 deadline for filing any pretrial or dispositive motions expired, Trustee has been diligently pursuing his case as Phase One proceeded to the appellate level and in responding to the Spiveys' motions in Phase Two of this trial. Second, despite all possible diligence, Trustee could not have foreseen that a court would hold that existing causes of action under O.C.G.A. § 18–2–22 should be abated. In the event that the *Chepstow Limited* case is upheld, if Trustee were not allowed to amend his Complaint, then he would be deprived of the right to pursue any state law claim of fraudulent conveyance and any derivative state law claim for attorney's fees. Therefore, I find that Trustee has satisfied the Rule 16 good cause requirement.

Following the Rule 16 analysis, the Court must conduct a Rule 15 analysis. Rule 15, which governs allowance of amendments and supplemental pleadings, provides that:

> [a] party may amend the party's pleadings ... by leave of court ...; and leave shall be freely given when justice so requires.... If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when *the presentation of the merits of the action will be subserved* thereby and *the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's ... defense upon the merits*.

Fed.R.Civ.P. 15(a), (b) (emphases added).

■ The court has extensive discretion in denying or granting leave to amend a complaint under Rule 15(a), *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir.1999). A court's exercise of its discretion is expressly limited in Rule 15 only by the necessity for determining that "the presentation of the merits of the action will be subserved" by granting leave to amend and that the objecting party has failed to show that it would be prejudiced in maintaining its defense on the merits. Fed. R.Civ.P. 15(b). Because leave to amend should be granted freely, the "refusal to allow amendment must be based on valid ground in order to withstand the test for abuse of discretion," *Lockett v. Gen. Fin. Loan Co. of Downtown*, 623 F.2d 1128, 1131 (5th Cir.1980).

■ Factors to be considered in granting or denying leave to amend are: *(1)* prejudice to the opposing party; *(2)* whether the amendment would be futile; and *(3)* whether the amendment would cause undue delay. *Campbell*, 166 F.3d at 1162.

■ In considering these factors, the Court concludes that Trustee should be granted leave to amend. It is evident that the Spiveys' defense will not be prejudiced by the amendment. Trustee's amendment does not add a new claim or alter the theory of recovery. The Spiveys have known of Trustee's intent to pursue a state law claim for fraudulent conveyance since the original Complaint dated February 22, 2000. Trustee is merely pursuing that same claim under an alternative code section. Second, as established in Part 1 of this Order, Trustee's amendment would not be futile because O.C.G.A. § 18–2–21 provides a viable cause of action for fraudulent conveyance. Finally, in that the trial date has been postponed due to the parties' continuing wrangling, the amendment will not cause undue delay.

Although "at some point in the course of litigation, an unjustified delay preceding a motion to amend goes beyond excusable neglect, even when there is no evidence of bad faith or dilatory motive," *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir.1981), that point has not yet been reached in this case. The trial has not begun, and the final pre-trial order has not been entered. Trustee's requested amendment does not add a party or change a theory of recovery; therefore, I find that the proposed amendment does not unduly prejudice the Spiveys' defense.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Defendant's Motion for Reconsideration of Order Granting Plaintiff's Motion for Leave to File Third Amendment to First Amended Complaint is DENIED.