## A07A1177. ATLANTIC INSURANCE BROKERS, LLC v. SLADE HANCOCK AGENCY, INC. et al.
### (652 SE2d 577)

ELLINGTON, Judge.

The Superior Court of Glynn County granted the summary judgment motion filed by Slade Hancock Agency, Inc. ("SHA") and its employee, William Phillips, in their declaratory judgment action against Atlantic Insurance Brokers, LLC ("AIB"). In its order, the trial court ruled that Phillips had not violated a nonsolicitation covenant in his consulting agreement with AIB. AIB appeals, contending the trial court erred in construing the consulting agreement in issue. For the reasons that follow, we affirm in part and vacate in part.

In order to prevail on a motion for summary judgment under OCGA § 9-11-56,

> the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton,* 280 Ga. 468, 470 (629 SE2d 204) (2006).

Viewed in the light most favorable to AIB, the record shows the following. Phillips sold the assets of his insurance agency to AIB on April 1, 1995. In conjunction with the sale, AIB hired Phillips as an employee. Pursuant to an employment contract they executed then, AIB agreed to pay Phillips, in addition to other compensation, $2,500 per month for 120 months beginning April 1, 2000, "without regard of [Phillips'] employment status with [AIB]." In 1998, Phillips retired and ended his employment with AIB.

On April 11, 2000, Phillips and AIB executed a consulting agreement that superseded the 1995 employment agreement, including

AIB's obligation to pay Phillips $2,500 per month for ten years. The new consulting agreement also provided as follows:

> **NONSOLICITATION OF INSUREDS:** [Phillips] covenants that during the term of this Agreement, and for a period of two (2) years following the termination of this Agreement for any reason, he shall not at any time, directly or indirectly, solicit, sell, attempt to divert or provide competing insurance services or coverages to any insureds who transacted business with [AIB] and with whom [Phillips] dealt on behalf of [AIB] and had material contact, either during the two (2) year period immediately preceding the date [Phillips] sold his business to [AIB], or during his subsequent employment by [AIB], or during the term of this Consulting Agreement. Provided that "material contact" is agreed to exist between [Phillips] and each insured: (i) with whom [Phillips] dealt; (ii) whose dealings with [AIB] were coordinated, supervised, arranged or initiated by [Phillips]; or (iii) about whom [Phillips] obtained confidential information.

The term of the 2000 consulting agreement was ten years, subject to AIB's right to terminate the agreement for cause as specified in the agreement.

On May 1, 2003, Phillips went to work for SHA. Before long, the owner of 24/7 Express, LLC ("24/7") contacted Phillips about securing long haul liability insurance for the company. Because Phillips' employer, SHA, did not have a source for such policies, Phillips asked AIB to act as an insurance broker to locate an insurer that would issue the policy. AIB placed the coverage with Harco Insurance Company and, as agreed, split the insurance commission with SHA. The following year, when the policy's expiration date approached, Harco Insurance Company declined to renew 24/7's policy. AIB attempted to locate another insurer. Phillips separately negotiated with another insurer, CNA Insurance Company, which issued the policy. SHA paid all of the expenses for writing the coverage for 24/7, including Phillips' expenses in traveling in 2003 and 2004 to Tennessee to meet with 24/7's owner.

On July 8, 2004, AIB notified SHA and Phillips that it considered 24/7 to be a client covered by the nonsolicitation clause and considered Phillips' conduct to be a breach of the 2000 consulting agreement. SHA and Phillips then filed this declaratory judgment action seeking a determination that Phillips may, without violating the 2000 consulting agreement, place insurance for entities who were not clients of AIB, and with whom Phillips had no material contact, prior to the end of his employment with AIB. In granting the petitioners'

motion for summary judgment, the trial court ruled that the prohibition on Phillips' solicitation of "insureds" applied only to insureds Phillips had dealt with prior to April 11, 2000, when the consulting agreement superseded the 1995 employment agreement. Because Phillips had not dealt with 24/7 prior to April 11, 2000, the trial court concluded that Phillips did not violate the consulting agreement when he placed insurance for 24/7 in 2004.

AIB contends the trial court erred in limiting the scope of the nonsolicitation covenant to entities who were already insured clients of AIB when the parties executed the consulting agreement on April 11, 2000. We agree. Despite its use of the past tense in defining "insureds," the nonsolicitation covenant by its plain terms applies to clients who transact business with AIB and deal with Phillips during the term of the consulting agreement, a period which necessarily *follows* the execution of the agreement.[1] Because the contract is unambiguous, we will not consider parol evidence that there was not a meeting of the minds because Phillips understood the nonsolicitation covenant to apply only to those clients AIB acquired when it bought Phillips' company or with whom he had material contact while he was an AIB employee.[2] The trial court's interpretation rendered the language "during the term of this Consulting Agreement" meaningless, in violation of the rules of contract construction.[3] Accordingly, we vacate that portion of the trial court's order.

---

[1] See *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464 (422 SE2d 529) (1992) (enforceable covenant not to solicit customers in employment agreement defined customers as those "with which Employee had contact" during the two years before termination of the employee's employment); *Habif, Arogeti & Wynne, P.C. v. Baggett*, 231 Ga. App. 289, 297 (3) (498 SE2d 346) (1998) (enforceable covenant not to solicit clients in employment agreement defined clients as entities for whom the employee " 'rendered or performed' " services during the twelve-month period immediately prior to the effective date of the termination of the employee's employment); *Sysco Food Svcs. of Atlanta v. Chupp*, 225 Ga. App. 584, 585, n. 2 (484 SE2d 323) (1997) (enforceable covenant not to solicit customers in employment agreement defined customers as those to whom the employer " 'sold or provided any products or services and with whom the employee dealt on behalf of the company at any time during the 12 months immediately preceding termination of his employment' ").

[2] See *Speed v. Muhanna*, 274 Ga. App. 899, 905 (2) (b) (619 SE2d 324) (2005) ("Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract.") (citation, punctuation and footnote omitted).

[3] See OCGA § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."); *Thomas v. B & I Lending, LLC*, 261 Ga. App. 39, 42 (1) (581 SE2d 631) (2003) (A "contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others. The construction of the contract should give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect.") (citations and punctuation omitted); *Harvey v. J. H. Harvey Co.*, 256 Ga. App. 333, 342

Nonetheless, we agree with the trial court's conclusion that Phillips did not violate the consulting agreement when he placed insurance for 24/7 in 2004. By its plain terms, the nonsolicitation covenant only prohibits Phillips from providing competing insurance services or coverages to an insured who transacted business with AIB during the relevant time period where Phillips dealt with that insured "on behalf of [AIB]." Although it is undisputed that 24/7 is an insured that transacted business with AIB in 2003 (during the term of the 2000 consulting agreement) and that Phillips subsequently provided competing insurance services to 24/7, there is no evidence that Phillips dealt with 24/7 "on behalf of [AIB]." The undisputed evidence shows that AIB did not ask Phillips to deal with 24/7; rather, the first contact among these parties was when 24/7 approached Phillips for help securing coverage. When Phillips invited AIB to co-broker the account in 2003, Phillips acted as an employee of SHA and not as an agent of AIB. Because there is no evidence that 24/7 was an insured with whom Phillips had dealt on behalf of AIB, the trial court correctly ruled that Phillips did not violate the consulting agreement when he placed insurance for 24/7 in 2004. Accordingly, we affirm that portion of the trial court's order.

*Judgment affirmed in part and vacated in part. Andrews, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 28, 2007.

*Fisher & Phillips, Walter J. Kruger III*, for appellant.
*Whelchel & McQuigg, J. Thomas Whelchel*, for appellees.

---

(3) (568 SE2d 553) (2002) ("In applying the rules of construction of contracts, we look to that construction which will uphold the contract as a whole and not make any provision meaningless.") (citation omitted).