In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0451. MORENO v. SMITH.

BLACKWELL, Justice.

Dolores Moreno is the mother of Gina Moreno, and in 2004, Dolores acquired a residential property in Gwinnett County. Three years later, Dolores gave a one-half interest in the property to Gina as a gift, and around the same time, Dolores and Gina signed a document that purports to be a contract. According to that document, Dolores agreed to sell her remaining one-half interest in the property to Gina, and Gina agreed to pay $75,000 to Dolores in $400 monthly installments. After six more years passed, Gina had made no payments to Dolores, and Dolores filed a lawsuit against Gina for breach of contract and for an equitable accounting as between tenants in common.[1] The trial court granted partial summary judgment to Dolores, concluding that the

[1] During the pendency of this lawsuit, Dolores passed away, Michael T. Smith was appointed as the temporary administrator of her estate, and Smith was substituted as the plaintiff. For purposes of this opinion, however, it is unnecessary to distinguish between Dolores and her estate, and for the sake of simplicity, we refer to both as "Dolores."

undisputed evidence showed as a matter of law that Dolores and Gina had entered into a binding and enforceable contract for the purchase and sale of the property. Following a bench trial on the question of a remedy, the trial court awarded damages to Dolores for breach of contract,[2] as well as fair market rent for her one-half interest as an equitable adjustment of the accounts of the tenants in common.[3] Gina appeals, and we reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.[4]

---

[2] As the measure of damages for breach of contract, the trial court looked to the interest that would have accrued at the legal rate (under OCGA § 7-4-2) on the total purchase price in the eight years that had passed from the breach until the date of judgment, and the trial court appears to have taken no account of the fair market value of the property. On appeal, Gina challenges that measure of damages, and she finds some support in our precedents. See Quigley v. Jones, 255 Ga. 33, 33 (334 SE2d 664) (1985) ("It has long been the rule that the measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value of the land at the time of the breach." (Citations omitted)). Nevertheless, for the reasons that follow, we do not decide today the proper measure of damages in this case.

[3] As to the remedy on the accounting claim, the trial court found that Gina appropriated the entire property to her own use, and it found that fair market rent was equitable because Gina had rented the property to her in-laws at a discounted rate. The trial court did, however, offset the award of fair market rent against the award of damages for breach of contract. As a result, the trial court awarded $15,736.16 to Dolores for breach of contract, and it awarded $26,263.84 to Dolores for fair market rent. On appeal, Gina challenges the measure of the relief awarded to equitably adjust the accounts of the tenants, but for the reasons that follow, we do not reach that issue today.

[4] Because Gina complains about the propriety of the equitable relief awarded by the trial court, this case falls within the current appellate jurisdiction of this Court in equity cases. See Ransom v. Holman, 279 Ga. 63, 64 (1) (608 SE2d 600) (2005). We note, however, that in cases in which a notice of appeal is filed on or after January 1, 2017, the Court of Appeals

2

1. Gina contends that the trial court erred when it awarded partial summary judgment to Dolores and concluded as a matter of law that Dolores and Gina had entered into a binding and enforceable contract. We agree. Although the document that Dolores and Gina signed purports to be a binding contract, Gina offered evidence that tends to show that no contract was made. Indeed, Gina submitted an affidavit in opposition to the motion for summary judgment in which she said, among other things, that she had signed the document in question at the request of her mother for the sole purpose of enabling Dolores to demonstrate an interest in the property and that she was earning income from it. Gina also said in her affidavit that, as of the time the document was signed, Dolores consistently had made statements to indicate that Gina was not expected to pay anything to Dolores for the property.[5]

---

will have jurisdiction of "[a]ll equity cases, except those cases concerning proceedings in which a sentence of death was imposed or could be imposed and those cases concerning the execution of a sentence of death." See Williford v. Brown, ___ Ga. ___, ___ (2), n.1 (Case No. S16A0177, decided May 9, 2016) (punctuation omitted) (citing and quoting from Appellate Jurisdiction Reform Act of 2016, Ga. L. 2016, p. ___, § 1-1).

[5] Gina brought forward other evidence at trial that was consistent with her claim that neither she nor Dolores intended to make a binding and enforceable contract when they signed the document.

"It is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject-matter, and in the same sense." Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn., 250 Ga. 391, 395 (297 SE2d 733) (1982). To determine whether the parties had the mutual assent or meeting of the minds that is essential for the formation of a binding and enforceable contract,

> courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent.

Id. More specifically, as one prominent commentator has explained,

> in those unusual instances in which one *intends* that one's assent have *no* legal consequences[,] [u]nder the objective theory, a court will honor that intention if the other party has reason to know it. And it will honor it if the other party actually knows it. . . . The same result has been reached even though a written agreement is made as a sham, for the purpose of deceiving others, with an oral understanding that it will not be enforced.

E. Allan Farnsworth, Contracts § 3.7, at 122 (2d ed. 1990) (citations and footnote omitted; emphasis in original). "The circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in

4

deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." McReynolds v. Krebs, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012) (citation and punctuation omitted). See also Farnsworth, supra at 123-124 ("Circumstances, rather than words, may also indicate a party's intention not to be bound. . . . [And] the fact that the parties to an agreement are members of the same family is given weight as showing an intention not to be legally bound." (Citation omitted)). "And where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." Fletcher v. C.W. Matthews Contracting Co., 322 Ga. App. 751, 754 (1) (a) (746 SE2d 230) (2013) (citation and punctuation omitted).

Dolores relies on the parol evidence rule, arguing that where a written contract is facially clear and complete, extrinsic evidence of contractual intent is immaterial and inadmissible to vary the terms of the contract. "Although parol evidence cannot be used to contradict or vary the terms of a valid written agreement, parol evidence may be used to show no valid agreement ever went into existence." BellSouth Advertising & Pub. Corp. v. McCollum, 209 Ga. App. 441, 444 (2) (433 SE2d 437) (1993) (citations and punctuation omitted).

5

See also Farnsworth, supra at § 7.4, at 480 (the parol evidence rule "does not come into play until the existence of an enforceable written agreement has been shown"). In particular, "the basic rule that a sham contract or a contract that the parties understood was not to be binding may be refuted by parol evidence to show that there was, in fact, no contract, is sensible and widely followed." 6-25 Corbin on Contracts § 25.21 (2016). See also Farnsworth, supra at 480 (it may be shown, "for example, . . . that the writing was a . . . sham").

Gina brought forward admissible evidence to show that Dolores and Gina did not intend to make a binding and enforceable contract when they signed the document, that the document was a mere sham, and that no binding and enforceable contract existed. And although it is the parties' intent at the time they allegedly entered the contract that matters, the evidence presented by Gina of their discussions at that time is arguably bolstered by other evidence of the circumstances surrounding the purported contract, including the ongoing relationship between the parties as mother and daughter, the undisputed fact that Dolores gifted a one-half interest in the property to Gina, the subsequent failure of Gina to make any monthly payments to Dolores, the failure of Dolores to assert a breach more promptly, and the repeated statements of Dolores that the

6

property belonged to Gina and that Gina did not have to pay her anything. Dolores disputed that evidence and presented her own evidence to show that she and Gina entered into a binding and enforceable contract. But courts are not authorized to weigh disputed evidence and resolve conflicts in the evidence on summary judgment. See Nguyen v. Southwestern Emergency Physicians, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015). Accordingly, we conclude that there is a genuine issue of disputed fact about the existence of a binding and enforceable contract in this case, and the trial court erred by granting partial summary judgment to Dolores on her claim for breach of contract. See Terry Hunt Constr. Co. v. AON Risk Svcs., 272 Ga. App. 547, 552 (3) (613 SE2d 165) (2005).

2. Because a genuine issue of material fact remains as to whether Gina breached any contract, we not only reverse the grant of partial summary judgment, but we also must reverse the award of damages for breach of contract. In addition, because the existence of a binding and enforceable contract between the parties may bear upon their obligations to one another as tenants in common, see, e.g., Borum v. Deese, 196 Ga. 292, 295 (2) (26 SE2d 538) (1943), we vacate the award of relief as to the equitable accounting claim, which cannot be resolved until it is finally determined whether a contract exists. For these

reasons, therefore, the judgment of the trial court is reversed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur.