**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 20, 2021**

# In the Court of Appeals of Georgia

A21A1048. THE CITY OF COLLEGE PARK et al. v. THE CITY OF SANDERSVILLE.

PHIPPS, Senior Appellate Judge.

The City of College Park sued the City of Sandersville, claiming Sandersville had breached a contract between College Park, Sandersville, and the Municipal Electric Authority of Georgia ("MEAG"). MEAG later intervened, and both College Park and MEAG moved for summary judgment. After the trial court denied the motions for summary judgment, the case proceeded to trial before a jury, which returned a verdict in favor of Sandersville. College Park appeals, challenging the denial of its motion for summary judgment and contending the trial court erred by allowing testimony regarding the Sandersville city council's legislative intent,

providing erroneous jury instructions, and asking the jury to answer purely legal questions.[1]

"Following a jury trial, we view the evidence in the light most favorable to the verdict." *Clements v. Weaver*, 301 Ga. App. 430, 430 (687 SE2d 602) (2009). So viewed, the record shows that College Park and Sandersville are both eligible to contract with MEAG to purchase electric power and energy. See OCGA §§ 46-3-129, 46-3-130. In 2007, Sandersville officials believed the city would need access to additional electricity for a contemplated new factory. To meet that need, MEAG, on behalf of Sandersville, negotiated a proposal for Sandersville to purchase additional power from College Park.

The subject of the proposed contract between Sandersville and College Park came before Sandersville's city council on September 4, 2007, when it was tabled until a meeting scheduled for September 17, 2007. At the September 17 meeting, Sandersville's mayor pro-tem moved to "finalize" the contract. According to the mayor pro-tem's trial testimony, the Sandersville city council at that time had some paperwork regarding the contract, but it did not have "Exhibit A," an attachment that

---

[1] College Park initially directed this appeal to the Supreme Court, which transferred the matter to this Court. See *City of College Park v. City of Sandersville*, No. S21A0514 (Jan. 11, 2021).

included the payment terms. The motion to finalize carried unanimously. The mayor pro-tem testified at trial that the motion to finalize was not a motion to approve, and that the city council therefore did not approve the contract at the September 17 meeting.

A few days after the September 17, 2007 city council meeting, the Sandersville city administrator told the Sandersville mayor that the contract for the purchase of power from College Park was ready for his signature. The mayor signed the contract on behalf of Sandersville, although Exhibit A still was not attached to the contract at that time. The mayor testified at trial that he would not have signed the contract if he had seen Exhibit A, which provided that Sandersville's payment obligations over the course of the contract would total more than $41 million.

Although Sandersville initially made the annual payments listed in Exhibit A, it stopped doing so in 2015. Consequently, in 2017, College Park sued Sandersville for breach of contract and several related claims. After MEAG later joined the case as an intervenor plaintiff, College Park and MEAG filed motions for summary judgment. The trial court denied summary judgment on grounds that "issues of material fact exist[ed] as to whether all essential terms of the Contract were agreed upon and whether the Mayor was authorized to sign the Contract." In its order

denying summary judgment, the trial court found there was "evidence that at least part of the Contract (Exhibit A) was not reduced to writing before being voted upon as required by Sandersville's [c]harter." The trial court also found there was evidence that the motion to finalize the contract did not amount to an approval of the contract by the city council as required by Sandersville's charter. Following the denial of summary judgment, the case was heard by a jury, which returned a verdict in favor of Sandersville. The trial court entered judgment in favor of Sandersville, and this appeal followed.

1. College Park contends that the trial court erred by denying its motion for summary judgment based on the erroneous conclusion that issues of material fact remained concerning whether all essential terms of the contract were agreed upon and whether the mayor of Sandersville was authorized to sign the contract. This claim is moot.

"[A]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." *Moore v. Moore*, 281 Ga. 81, 85 (6) (635 SE2d 107) (2006) (citation and punctuation omitted). The one exception to this rule is that

4

"if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial, then the denial of the motion is not rendered moot by the verdict and judgment." *AgSouth Farm Credit, ACA v. Gowen Timber Co.*, 336 Ga. App. 581, 586 (1) (784 SE2d 913) (2016) (citation and punctuation omitted).

In this case, the issue of whether College Park and Sandersville formed a contract that satisfied the requirements of Sandersville's charter was squarely before the jury. Evidence was presented at trial regarding whether all essential terms of the contract were agreed upon and whether the mayor of Sandersville was authorized to sign the contract. The jury heard evidence that when the Sandersville city council voted to finalize the contract, the council did not have Exhibit A. The jury also heard evidence that the motion to finalize was not a motion to approve the contract.[2] After hearing the evidence, the jury found that the contract between College Park and Sandersville was not valid and enforceable. "Because the legal issue raised and resolved in denying the motion for summary judgment was considered at trial, [College Park's] motion for summary judgment is moot." *AgSouth Farm Credit*, 336 Ga. App. at 586 (1) (citation and punctuation omitted).

[2] College Park's claim that the terms "finalize" and "approve" are interchangeable presents a jury question – the question at the heart of what the jury was charged with deciding – on the facts of this case.

5

2. College Park next contends that the trial court erred by denying its motion for summary judgment because – assuming the parties entered into an agreement here – Sandersville had no legal defense to its duties under the contract. This enumeration presents nothing for this Court to review.

The trial court bifurcated the trial in this case, deferring consideration of Sandersville's "remaining legal defenses" until after the jury had addressed the threshold issue of whether a contract was formed.[3] In its order entering judgment in favor of Sandersville, the court concluded that, "in light of the jury verdict finding the Contract unenforceable, the remaining legal issues are moot." The trial court never conducted a trial on these additional defenses and never ruled on them, either in its order denying summary judgment or at trial. Consequently, this appeal presents no ruling on these additional defenses for this Court to review. See *Waters v. Glynn County*, 237 Ga. App. 438, 441 (4) (514 SE2d 680) (1999) ("Where a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it.").

---

[3] In its answer, as amended, Sandersville asserted several defenses premised on, inter alia, constitutional issues, immunity, and ante litem notice requirements.

3. College Park claims that the trial court erred by allowing testimony regarding the Sandersville city council's "legislative intent" about the approval of the contract. We find no error.

The admission or exclusion of evidence "is generally committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." *Cooper Tire & Rubber Co. v. Crosby*, 273 Ga. 454, 456-457 (2) (543 SE2d 21) (2001) (citations and punctuation omitted).

College Park contends that Sandersville approved the contract under the terms of its charter and the trial court should have prohibited any evidence concerning the "legislative intent" of Sandersville's city council at the time the contract allegedly was approved. On appeal, College Park does not specifically identify any evidence of legislative intent it claims was erroneously admitted. However, prior to trial, College Park filed a motion in limine asking the trial court to prohibit testimony concerning the legislative intent of Sandersville's city council when it voted to finalize the contract on September 17, 2007. In response, Sandersville argued that it did not intend to offer testimony to show legislative intent. Sandersville argued that, instead, the testimony it intended to offer would help the factfinder determine whether the purported approval of a contract was actually accomplished. At trial, over College

7

Park's objection, Sandersville's mayor pro-tem testified that his motion to "finalize" the contract at the September 17, 2007 meeting was not a motion to approve, and that the city council therefore did not approve the contract at that meeting.

Testimony concerning legislative intent – the reasons underlying a legislative enactment – is inadmissible. *Fulton County v. Dangerfield*, 260 Ga. 665, 666 (1) (b) (398 SE2d 14) (1990); *Jackson v. Delk*, 257 Ga. 541, 543 (2) (361 SE2d 370) (1987). On the other hand, "[t]he circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." *Moreno v. Smith*, 299 Ga. 443, 445 (1) (788 SE2d 349) (2016) (citation and punctuation omitted). "And where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." Id. (citation and punctuation omitted). Here, one of the issues before the jury was whether the Sandersville city council approved the contract. The mayor pro-tem's testimony was evidence of whether the city council had approved the contract, not evidence of legislative intent. Consequently, this enumeration fails.

4. College Park contends that the trial court erred by giving erroneous instructions to the jury and asking the jury to answer purely legal questions. We disagree.

"The review of allegedly erroneous jury instructions is a legal question, and we therefore owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." *Carter v. Smith*, 294 Ga. App. 590, 592-593 (2) (669 SE2d 425) (2008). We review the use of a special verdict form for abuse of discretion. *Ga. Trails & Rentals, Inc. v. Rogers*, 359 Ga. App. 207, 218 (4) (855 SE2d 103) (2021).

> [A] trial judge, whether requested in writing or not, should give to the jury appropriate instructions on every substantial, vital, and controlling issue presented by the pleadings and evidence. Upon review, jury instructions must be read and considered as a whole in determining whether the charge contained error. Challenged segments cannot be considered in isolation to ascertain whether the charge is accurate and fair and worked no prejudice to the complaining party.

*Sagon v. Peachtree Cardiovascular & Thoracic Surgeons, P.A.*, 297 Ga. App. 379, 381 (677 SE2d 351) (2009) (citations and punctuation omitted).

The trial court instructed the jury on the governing legal principles regarding the formation of a contract by a city as follows:

9

[W]ith regard to cities entering into contracts, a city's ability to enter into a [c]ontract is limited. The limitation[s] placed on a city's ability to [c]ontract include checks that are designed to prevent improper action by the city[,] or its ordinances specifically provide how a city [c]ontract shall be made and executed, [and] the city may only [c]ontract in the methods prescribed, otherwise the [c]ontract is invalid and unenforceable.

It further advised the jury that "mere procedural irregularities leading to the signing of the [c]ontract with a city, without more, will not make a [c]ontract invalid or unenforceable." The trial court also instructed the jury: "You may consider the parties['] actions before, during, and after the September 17th, 2007, vote to determine whether the city [c]ouncil approved the contract." The trial court then instructed the jury on the provisions of the Sandersville city charter:

> Sec. 6.26-Procurement and property management.
> The city charter provides that:
> No [c]ontract with the city shall be binding on the city unless:
> (1) It is in writing.
> (2) It is drawn or submitted and reviewed by the city attorney and, as a matter of course, is signed by him to indicate such drafting or review; and

(3) It is made or authorized by the city [c]ouncil and such approval is entered in the city [c]ouncil journal of proceedings.[4]

On damages, the trial court instructed the jury: "If you believe from a preponderance of the evidence that the Contract between College Park and Sandersville is valid and enforceable, you must then decide whether plaintiff is entitled to recover damages[.]" In addition, the trial court instructed the jury: "Your verdict should be a true verdict based upon your opinion of the evidence according to the laws given you in this charge." Finally, the first question on the verdict form asked, "Is the contract between College Park and Sandersville valid and enforceable?"

College Park argues the trial court erred by instructing the jury that it had to determine whether "the Contract between College Park and Sandersville is valid and enforceable." College Park also contends that the verdict form, which asked the jury to decide that question, was improper. According to College Park, this instruction and the verdict form asked the jury to determine questions of law that were properly for the trial court, not the factfinder. Read as a whole, however, it is clear that the jury instructions – when viewed in context with the evidence presented in this case and the verdict form – asked the jury to determine whether the contract was "valid and

---

[4] The parties do not dispute the contents of the city charter.

11

enforceable" in the context of whether the parties ever entered into an agreement, not in the context of whether the terms of the contract were ambiguous. The trial court in this case instructed the jury on legal principles and asked the jury to apply those legal principles to reach a conclusion based on the facts it found from the evidence presented. The verdict form was consistent with the instructions. College Park acknowledges that the question of whether a party assented to a contract properly can be a question for the jury. See *Fletcher v. C. W. Matthews Contracting Co.*, 322 Ga. App. 751, 754 (1) (a) (746 SE2d 230) (2013). That is precisely what happened here. Accordingly, College Park has failed to demonstrate error in the jury instructions or the verdict form.

College Park also argues that the trial court erred by stating it was the jury's duty "to determine whether the undisputed facts related to the [c]ity [a]ttorney's review of the contract constituted a mere technical error or whether it was significant enough to render the whole contract void." These statements, however, were made by the trial court outside the presence of the jury – during argument on a motion for directed verdict made by Sandersville – and thus have no bearing on what the jury in fact was told or asked to do. And although College Park characterizes the facts related to the Sandersville city attorney's review of the contract as "undisputed" and claims

12

that all parties agree that the city attorney reviewed the contract and did not sign it, the city attorney in fact testified that he did not review the entire contract. Moreover, College Park does not identify a specific jury instruction it claims was erroneous on this basis. Thus, College Park has not shown reversible error by the trial court on this ground.

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*

13