**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and MARKLE, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 28, 2024**

# In the Court of Appeals of Georgia

A22A0857, A22A0924. PREMIER PEDIATRIC PROVIDERS, LLC
v. KENNESAW PEDIATRICS, P. C.; and vice versa.

MARKLE, Judge.

These consolidated appeals arise from Kennesaw Pediatrics, P.C.'s
("Kennesaw") request to inspect Premier Pediatric Providers, LLC's ("Premier")
corporate records. When Premier denied the request on the ground that Kennesaw
was not a member of Premier because the subscription agreement contained a
scrivener's error, Kennesaw filed a petition for the trial court to order Premier to give
it access to the records pursuant to OCGA § 14-11-313 (3).[1] The trial court ruled in

---

[1] That statute provides that a member may seek to inspect the company's
records and, if the company refuses access, the member may seek an order from the
trial court directing the company "to show cause why an order permitting such
inspection by the applicant should not be granted." OCGA § 14-11-313 (2), (3).

Kennesaw's favor, and Premier appealed. Kennesaw then moved to dismiss the appeal due to Premier's failure to timely order a transcript. The trial court denied the motion, but we reversed. See *Premier Pediatric Providers v. Kennesaw Pediatrics*, 365 Ga. App. 351 (878 SE2d 588) (2022). The Supreme Court of Georgia granted certiorari, vacated in part and reversed in part our opinion, and remanded the cases for consideration of the merits. *Premier Pediatric Providers v. Kennesaw Pediatrics*, 318 Ga. 350, 360 (4) (898 SE2d 481) (2024).

In Case No. A22A0924, which involves Kennesaw's appeal from the trial court's denial of its motion to dismiss Premier's appeal, we now adopt the Supreme Court's decision and hold that the trial court did not abuse its discretion by denying the motion to dismiss. Accordingly, we affirm the trial court's order.

In Case No. A22A0857, Premier appeals from the trial court's order instructing it to provide Kennesaw access to its records. On appeal, Premier argues that the trial court erred because (1) Premier's representative did not give conflicting testimony regarding the subscription agreement; (2) Kennesaw could not avail itself of the summary proceeding under OCGA § 14-11-313 for inspection of records given the dispute over whether it was a member of Premier; (3) the trial court should have

considered parol evidence to determine whether there was a scrivener's error in the agreement; and (4) Kennesaw was not entitled to attorney fees. For the reasons that follow, we affirm.

> This Court reviews de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

(Citations and punctuation omitted.) *Ridgewalk Holdings v. Atlanta Apt. Investment Corp.*, 358 Ga. App. 717, 719 (856 SE2d 75) (2021). A trial court's decision to order inspection of company records "will be affirmed unless it is found to be clearly erroneous." *Advanced Automation v. Fitzgerald*, 312 Ga. App. 406, 406-407 (718 SE2d 607) (2011) (considering trial court's order under OCGA § 14-2-1602); see also *Parker v. Clary Lakes Recreation Assoc.*, 243 Ga. App. 681, 683 (534 SE2d 154) (2000).

So viewed, as set out in our prior opinion, in July 2005, Kennesaw investor and sole owner Dr. Mark Long executed a subscription agreement to purchase one share of Premier, which is a limited liability company that provides "operation support" for a network of pediatric physicians who own Independent Pediatric Alliance - Greater

Atlanta, LLC ("IPA-GA"). The agreement was also signed by Thomas J. Finnerty, in his capacity as Premier's chief operating officer, and specifically identifies the parties as Kennesaw and "Premier Pediatric Providers, LLC D/B/A Kids First Pediatric Alliance," and provides that Kennesaw purchased its share for $3,000. Long made the check out to Kids First, and the memo line indicated the check was for "Membership Dues." The agreement further provided that the sale was approved by Premier's managers, and it contained a merger clause.

In March 2019, Kennesaw requested inspection of Premier's books, as permitted by OCGA § 14-11-313. *Premier Pediatric Providers*, 365 Ga. App. at 352. Premier denied Kennesaw's request, asserting that the subscription agreement contained a scrivener's error, and that the parties intended that Kennesaw would purchase a membership in IPA-GA. Kennesaw requested evidence to support Premier's argument that the agreement contained an error, and demanded access to Premier's records. When Premier again refused, Kennesaw filed a verified complaint under OCGA § 14-11-313 (3) for inspection of the corporate records and for attorney fees.[2]

---

[2] Importantly, Premier did not seek to reform the contract. See OCGA § 9-11-81 (parties may file a counterclaim in special statutory proceedings). Instead, Premier

In its answer, Premier admitted that Finnerty signed the subscription agreement as its representative, but it asserted that the agreement was for membership in IPA-GA.[3] Premier then amended its answer to indicate that Finnerty signed the agreement in his capacity as a representative for IPA-GA. When Finnerty was later deposed, he acknowledged that the agreement was between Premier and Kennesaw, and he admitted that he signed the contract, but he denied that he did so as Premier's representative. Finnerty also submitted affidavits in which he stated that he was the chief executive officer of Premier and was authorized to act on its behalf, but that Premier never consented to Kennesaw becoming a member, and neither Premier nor

argues, without citation to any authority, that Kennesaw was required to file a declaratory action to resolve the dispute. Had Premier filed a reformation action or a counterclaim for reformation, it could have introduced parol evidence to show the alleged mutual mistake in the names of the parties to the subscription agreement. *Morris v. Morris*, 282 Ga. App. 127, 133 (5) (637 SE2d 838) (2006) ("[S]ince Harold Wayne Morris sought reformation of the option contract on the basis of mutual mistake of fact due to a scrivener's error mistakenly describing the property to be sold, parol evidence of the real terms of the agreement was admissible"); see also *Zaimis v. Sharis*, 275 Ga. 532, 533 (1) (570 SE2d 313) (2002) ("A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties.") (citation and punctuation omitted); OCGA § 23-2-25 ("If the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto.").

[3] Finnerty was the chief executive officer for both Premier and IPA-GA.

its authorized representative signed a subscription agreement between Kennesaw and IPA-GA or authorized anyone to sign the agreement on Premier's behalf.

Both parties moved for summary judgment.[4] Following a hearing, the trial court granted Kennesaw's motion and denied Premier's, finding Kennesaw had the right to inspect Premier's books under OCGA § 14-11-313 (3) because the subscription agreement was unambiguous and included a merger clause, and thus it could not consider parol evidence. The trial court also concluded that Finnerty gave conflicting testimony, which it construed against Premier under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), and it did not allow Premier to amend its answer to withdraw its admission that Premier's representative signed the subscription agreement. The trial court then found Kennesaw was entitled to attorney fees, as permitted by the statute. Premier's appeal followed. However, when Premier failed to timely submit a transcript for the record on appeal, Kennesaw moved the trial court to dismiss the appeal. The trial court denied the motion to dismiss, and Kennesaw filed its cross-appeal from that order.

*Case No. A22A0924*

---

[4] Although OCGA § 14-11-313 is a special statutory proceeding, the Civil Practice Act generally applies. OCGA § 9-11-81.

1. In its cross-appeal, Kennesaw argued that the trial court should have dismissed the appeal due to Premier's failure to timely file a transcript. In *Premier Pediatric Providers*, 365 Ga. App. at 358 (1) (b), we agreed, finding the trial court abused its discretion under OCGA § 5-6-48 (c). Our Supreme Court granted certiorari, and concluded that this Court was not authorized to dismiss an appeal, as that discretion rests with the trial court. *Premier Pediatric Providers*, 318 Ga. at 351, 360 (4). Our Supreme Court therefore reversed our decision, and remanded the case to this Court to address the merits of Premier's appeal. Id. at 360 (4).

We therefore adopt the Supreme Court of Georgia's decision as our own, and we affirm the trial court's denial of Kennesaw's motion to dismiss the appeal. *Premier Pediatric Providers*, 318 Ga. at 358-360 (3). As instructed by the Supreme Court's mandate on remand, we now turn to the merits of Premier's appeal.

*Case No. A22A0857*

2. In its appeal, Premier challenges the trial court's order allowing Kennesaw to inspect its records under OCGA § 14-11-313 (3), which provides a member the means to obtain access to a company's records, because there was a genuine dispute whether Kennesaw was a member of Premier due to a scrivener's error in the

7

subscription agreement. Premier further argues that the trial court erred by finding Finnerty gave conflicting testimony and that it could not consider parol evidence to determine that Kennesaw was not a member of Premier. Finally, Premier argues that Kennesaw was not entitled to statutory attorney fees. We address each issue in turn, finding no merit to any of them.

(a) Whether Kennesaw was a "member" under OCGA § 14-11-313

OCGA § 14-11-313 permits a member of a limited liability company to inspect the company's records. OCGA § 14-11-313 (2).[5]

> If the limited liability company refuses to permit the inspection . . ., the member demanding inspection may apply to the superior court . . . for an order directing the limited liability company to show cause why an order permitting such inspection by the applicant should not be granted. The court shall hear the parties summarily, by affidavit or otherwise, and if the limited liability company fails to establish that the applicant is not entitled to such inspection, the court shall grant an order permitting such inspection, subject to any limitations which the court may prescribe, and

---

[5] "[W]e apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature." (Citation omitted.) *Mannato v. SunTrust Banks*, 308 Ga. App. 691, 692 (708 SE2d 611) (2011).

grant such other relief, including costs and reasonable attorneys' fees, as the court may deem just and proper.

OCGA § 14-11-313 (3); see also *Ridgewalk Holdings*, 358 Ga. App. at 721 (3). For purposes of this statute, "member" is defined as "a person who has been admitted to a limited liability company as a member as provided in Code Section 14-11-505 and who has not ceased to be a member as provided in Code Section 14-11-601 or 14-11-601.1." OCGA § 14-11-101 (16); see also OCGA § 14-11-505 (b); see also *Ridgewalk Holdings*, 358 Ga. App. at 721 (3).

Thus, per the plain language of § 14-11-313, Kennesaw was entitled to inspect Premier's records as long as it was a member of Premier. Premier contends that there was a scrivener's error in the subscription agreement, which should have named IPA-GA in place of Premier; thus, Kennesaw was not a member of Premier. To address this dispute arising from the subscription agreement, we consider the well-established rules of contract interpretation, reviewing questions of contract interpretation de novo. *Lambert v. DMRT, LLC*, 370 Ga. App. 103, 109 (1) (b) (i) (894 SE2d 456) (2023).

"The cardinal rule of contract construction is to ascertain the intention of the parties, as set out in the language of the contract." (Citation and punctuation omitted.) *Overlook Gardens Properties v. Orix, USA*, 366 Ga. App. 820, 823-824 (1) (a) (884 SE2d 433) (2023).

> Contract interpretation is guided by three steps: First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation omitted.) *Lambert*, 370 Ga. App. at 109 (1) (b) (i).

As the trial court properly found, the subscription agreement was clear and unambiguous. On the face of the agreement, which Premier drafted, the parties are identified as Premier and Kennesaw and it indicates that Kennesaw purchased one share of Premier. Premier's chief executive officer signed the agreement.[6] And the

---

[6] The trial court found that Finnerty's testimony as to whether he signed as a representative of Premier was conflicting, and therefore it construed the testimony against Premier under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). Whether testimony is conflicting "is a question for the trial [court] to

agreement provided that "[t]he execution, delivery and performance of this Subscription Agreement by the Company will have been duly approved by the Managers of the Company and all other actions required to authorize and effect the offer and sale of the Shares will have been duly taken and approved."[7] As a result, the trial court properly concluded that the contract was clear and unambiguous, and under its terms, Kennesaw was a member entitled to access the records.

Nevertheless, relying on *Ridgewalk Holdings*, 358 Ga. App. at 721 (3), Premier contends that Kennesaw could not avail itself of the summary procedures in OCGA § 14-11-313 (3) because there was a dispute as to whether Kennesaw was a member. We find *Ridgewalk* distinguishable. In that case, the company proffered evidence that

decide." *Prophecy*, 256 Ga. at 30 (2). Premier contends that the trial court erred because Finnerty's testimony was not inconsistent. Pretermitting whether the trial court properly evaluated Finnerty's testimony under *Prophecy*, Premier cannot meet its burden under OCGA § 14-11-313 (3) given the unambiguous language of the contract, and the exclusion of parol evidence to contradict that language.

[7] Premier's argument that it did not take those steps necessary to admit Kennesaw as a member under its operating agreement is unavailing. It cannot use its own failure to perform those acts to defeat Kennesaw's rights under the contract. See *Harvey v. J. H. Harvey Co.*, 256 Ga. App. 333, 337 (1) (568 SE2d 553) (2002) (a party "cannot set up his own breach of the contract to discharge himself from its performance") (citation omitted); *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 784 (1) (386 SE2d 537) (1989) ("a contract will not be construed so as to authorize one of the parties to take advantage of his own wrong.") (citation and punctuation omitted).

the member had assigned her interest to someone else, and thus there was a factual dispute as to whether the movant was a member of the company. 358 Ga. App. 721-722 (3). In this case, for the reasons discussed above, there is no such factual dispute given the clear terms of the subscription agreement.

(b) Parol evidence

Premier contends, however, that there was no valid contract because there was no meeting of the minds, as the parties intended that Kennesaw would be purchasing a membership in IPA-GA rather than Premier. In support, it points to tax returns and communications that post-date the subscription agreement, along with the parties' conduct over the 15 years since the agreement was signed, to show that Kennesaw understood it was a member of IPA-GA and not Premier. But the clear and unambiguous language in the contract forecloses any argument concerning parol evidence.[8]

---

[8] We find the cases cited by Premier distinguishable. For example, in *Yeazel v. Burger King Corp.*, 241 Ga. App. 90, 93 (2) (526 SE2d 112) (1999), we held that the trial court could consider parol evidence in a reformation action to explain a mutual mistake. But Premier did not bring an action for reformation. For this same reason, Premier's reliance on *Georgia Farm Bureau Mutual Insurance Co. v. Wall*, 242 Ga. 176, 178 (2) (249 SE2d 588) (1978), is not persuasive.

Where the language of the contract is clear and unambiguous, parol evidence "is not admissible to contradict or construe an unambiguous contract." (Citation and punctuation omitted.) *Overlook Gardens Properties*, 366 Ga. App. at 827 (1) (a) (ii). Moreover, the contract contained a merger clause, further barring the argument Premier seeks to make here. See id. ("It is axiomatic that a merger or entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. Thus, if the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract.") (citation omitted). Accordingly, the trial court properly determined that it could not consider parol evidence to find there was no meeting of the minds.

(c) Attorney fees

Finally, Premier contends that the trial court erred by awarding attorney fees to Kennesaw under OCGA § 14-11-313 (3). Premier's argument that Kennesaw was not entitled to attorney fees rests on the premise that there was a dispute over Kennesaw's membership in Premier that would preclude the application of OCGA § 14-11-313 (3).

Under OCGA § 14-11-313 (3), the trial court is authorized to award fees if it determines that the party seeking access to a company's records was entitled to an inspection. As discussed above, Kennesaw was a member under the terms of the agreement and was thus entitled to access to Premier's records. The trial court was therefore within its power to award attorney fees.

*Judgments affirmed. Mercier, C. J., and Dillard, P. J., concur.*

ON MOTION FOR RECONSIDERATION

Premier has filed a motion for reconsideration of our opinion affirming the trial court's order granting Kennesaw access to Premier's records under OCGA § 14-11-313, arguing that we misapplied the parol evidence rule. Premier has not identified any error warranting reconsideration.

First, Premier relies on *Shaver v. McLendon*, 26 Ga. 228, 229 (1858), and *Nguyen v. Talisman Roswell, LLC*, 262 Ga. App. 480, 482 (585 SE2d 911) (2003), to support its argument that parol evidence is admissible in this case. In *Shaver*, the Court held that the holder could bring suit in law or equity to correct the name on the bond and offer evidence that there was a misnomer. 26 Ga. at 229. But that case involved an error in a Fi. Fa. and not a contract between the parties. And in *Nguyen*, the plaintiff claimed that there had been a breach of his lease for rental space because a clerical error in the lease identified the property as larger than the parties agreed upon. 262 Ga. App. at 481. Notably, Nguyen offered no contradictory evidence, and failed to respond to discovery requests. Id. at 481-482. Explaining that Nguyen should not "profit from his noncompliance," this Court concluded that uncontradicted parol evidence in the form of communications prior to the signing of the lease and immediately after the signing alerting Nguyen to the

discrepancy would be admissible to prove the parties' intent where there was a latent ambiguity in the lease. 262 Ga. App. at 481-482.

But, here, there was no ambiguity in the contract, and thus parol evidence — particularly evidence of conduct years after the contract was signed — is not admissible. See *LNV Corp. v. Studle*, 322 Ga. App. 19, 21 (1) (743 SE2d 578) (2013); see also *Yash Solutions v. New York Global Consultants Corp.*, 352 Ga. App. 127, 141 (2) (b) (834 SE2d 126) (2019) (in absence of ambiguity, a contract "will be enforced according to its plain terms," and a court may not "consider surrounding circumstances or parol evidence") (citations and punctuation omitted); OCGA § 13-2-2 (1) ("Parol evidence is inadmissible to add to, take from, or vary a written contract."). Rather, Premier seeks to create an ambiguity through the admission of post-contract parol evidence, which is not permissible. See *Gillespie v. Schuman*, 62 Ga. 252, 256-257 (3) (1879) (parol evidence cannot be used to create an ambiguity and defeat the plain and unambiguous terms); see also *College Park Bus. and Indus. Dev. Auth. v. College Park MOB*, 371 Ga. App. 84, 92 (2) (c) (899 SE2d 749) (2024) (parol evidence not relevant to show mutual mistake in contract where "mistake" arose in large part from appellant's own negligence in allegedly signing the wrong version of the agreement). Parol evidence is designed to explain an ambiguity in a contract; it is not intended to vary the contract's unambiguous language. *Albany*

*Fed. S. & L. Assn. v. Henderson*, 198 Ga. 116, 143 (6) (31 SE2d 20) (1944); see also

*ESI Cos. v. Fulton County*, 271 Ga. App. 181, 184 (1) (c) (609 SE2d 126) (2004).

Second, Premier argues that parol evidence was admissible to show there was no valid contract. In support, Premier points to *Moreno v. Smith*, 299 Ga. 443, 445-446 (1) (788 SE2d 349) (2016). Although parol evidence may be admissible to show no contract existed, *Moreno*, 299 Ga. at 445 (1), parol evidence that post-dates the contract and shows subsequent disagreements over the contract terms, without more, does not show a lack of mutual assent. *Extremity Healthcare v. Access to Care America*, 339 Ga. App. 246, 255-256 (1) (793 SE2d 529) (2016) (distinguishing *Moreno*); see also *AgSouth Farm Credit v. Gowen Timber Co.*, 336 Ga. App. 581, 590 (2) (b) (i) (784 SE2d 913) (2016) (noting that there is "no rule of law better settled or more salutary in its application, than that which refuses to admit oral testimony to contradict, vary, or materially affect, written agreements.").

Moreover, the use of parol evidence in this case is not warranted. "Georgia courts will often refuse to save contracting parties from their own unilateral mistakes that could have been avoided through the exercise of due diligence." *Patterson v. CitiMortgage*, 820 F3d 1273, 1276 (II) (11th Cir. 2016); see also *ESI Cos.*, 271 Ga. App. at 184 (1) (b) ( "The rule is well settled that a simple mistake by

a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief.") (citation omitted). Here, there is no dispute that Premier drafted the agreement; Premier and IPA share the same CEO; and Premier's CEO admitted he did not notice that the contract he signed was in Premier's name. And, importantly, at no time before or during the underlying proceedings did Premier seek to rescind or reform the contract or join IPA as an indispensable party, and IPA never moved to intervene. See OCGA §§ 9-11-21; 9-11-24. Thus, the "mistake" here is entirely of Premier's own making, and it should bear the burden of its mistake. See *Decision One Mtg. Co. v. Victor Warren Properties*, 304 Ga. App. 423, 427 (696 SE2d 145) (2010); *Berry v. Atlas Metals*, 152 Ga. App. 437, 439 (2) (263 SE2d 179) (1979) (party cannot rely on claim of mutual mistake that was due to its own negligence).

To interpret the admissibility of parol evidence as broadly as Premier suggests would essentially allow the use of such evidence in every contract case; all the party would have to do is claim mistake in the contract formation. Such an interpretation is not what the law requires. See *Weintraub v. Cobb Bank & Trust Co.*, 249 Ga. 148, 149 (1) (288 SE2d 553) (1982) (" It would be extremely dangerous and inconsistent with those general rules of evidence, by which we

proceed in courts of justice, to allow a party, after giving an instrument, in which he says, 'I promise to pay on demand,' to say by parol evidence, 'You know I did not mean to pay on demand.'") (citation omitted).

*Motion for reconsideration denied.*